## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Jason Johnson, being first duly sworn, hereby depose and state as follows:

### I.    Agent Experience

1.    I am a Federal Bureau of Investigation ("FBI") Task Force Officer and have been since October 1, 2017. I am assigned to the FBI's Albany, New York Field Division, Vermont Resident Agency.  As an FBI Task Force Officer, I am a "federal law enforcement officer" as defined in Federal Rule of Criminal Procedure 41(a)(2)(C), authorized to investigate violations of the United States Code under Title 21, to include applying for search warrants. My primary duties include the investigation of controlled substance offenses.

2.    I am employed by the Vermont State Police ("VSP") as a Detective Sergeant and am a certified law enforcement officer in the State of Vermont, having been certified by the Vermont Criminal Justice Training Council for over 17 years. During my career, I have received extensive training related to criminal investigations. I have authored numerous search warrants and participated in hundreds of criminal investigations, many involving the distribution of controlled substances, and the analysis of phone records, digital media, and other electronic communications. Through my training and experience, I am familiar with electronic sources of information related to electronic devices and cellular telephone service providers.

### II.    Subject Devices

3.    Pursuant to Federal Rule of Criminal Procedure 41, I submit this Affidavit in support of a warrant authorizing the seizure of and data extraction from two cellular phones and two digital recording devices (the "Subject Devices") described below. The Subject Devices are all in the custody of the Vermont State Police in Rutland, Vermont, and further described within Attachment A.

1

a. *Subject Device #1*: A Samsung cellular phone, black in color with a red outer case, IMEI: 3519666241000142, found on the floor of room 18 and believed to be the primary phone of Bradley SALDI, currently in the custody of the Vermont State Police in Rutland, Vermont, and identified as item # 4 (case number 23H2000293).

b. *Subject Device #2*: A TCL 30Z Tracfone cellular phone, black in color, IMEI 01605300719996, found between the box spring and mattress in room 18 and believed to belong to SALDI, currently in the custody of the Vermont State Police in Rutland, Vermont, and identified as item #6 (case number 23H2000293).

c. *Subject Device #3*: A Evistr digital recorder found between the mattress and box spring in room 18, believed to belong to SALDI, currently in the custody of the Vermont State Police in Rutland, Vermont, and identified as item #7 (case number 23H2000293).

d. *Subject Device #4*: A Digital recorder hidden in a pen found between the mattress and box spring in room 18, believed to belong to SALDI, currently in the custody of the Vermont State Police in Rutland, Vermont, and identified as item #9 (case number 23H2000293).

4.     The Subject Devices were seized during the execution of a federal search warrant at the Highlander Motel, Room 18, on July 6, 2023, as described further herein.  As set forth herein, there is probable cause to believe that data stored on the Subject Device consists of evidence and instrumentalities of violations of federal law of 21 U.S.C. §§ 841(a) and 846, relating to SALDI, among others known and unknown.

### III.    Sources of Information

5.     The facts set forth in this affidavit are based on my personal observations and knowledge and may also be based on: (a) my training and experience, (b) information obtained

2

from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

### IV.     Information about Mobile Communication Devices

6.      Through my training and experience, I am aware that people frequently use personal cellular telephones and mobile communication devices such as Subject Devices #1 and #2, described herein, for work-related and personal communications and purposes. Many mobile communication devices have advanced capabilities, including Internet browsing, text and e-mail, photography and video storage, notes, calendars, location-based tracking and logging, and data file storage. I am also aware, through training and experience, that people commonly use mobile communication devices to communicate with each other via voice, direct connect, text message, and e-mail; store contact data such as names and addresses; obtain and store directions and maps; and search the Internet and capture audio, image, and video files.

7.      If this search warrant is granted, the Subject Devices will be examined by a law enforcement officer or digital forensic specialist. The examination of the Subject Devices will include a physical search of the devices via the use of a proprietary data extraction device. This type of search may result in the recovery of data that has been previously deleted (including the recovery of deleted text messages and/or web browsing data). In most cases, previously deleted data may be recovered, unless the data has been over-written by the addition of new content on the

3

Subject Devices. I know that most modern mobile communication devices (especially smart phones) have large storage capacities, which dramatically increases the likelihood that the previously deleted data has not been over-written with new content and is, therefore, recoverable.

8.      Based on my knowledge, experience, and direct participation in investigations into the distribution of and conspiracy to distribute controlled substances, I know that:

(a)     Persons who participate in the distribution of controlled substances frequently use cellular phones and other electronic devices to coordinate their unlawful activities, and to maintain contact with suppliers and consumers of illegal drugs.

(b)     I know information stored in the memories of these communications devices constitutes evidence of drug trafficking and or the illegal movement of currency. Among other things, electronic devices, such as mobile phones, may contain the telephone numbers assigned to the communication devices, messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received.

(c)     With their cellular phones, drug traffickers often take photographs of other members of their organizations, assets obtained from profits of drug sales, locations associated with their illegal activity, and other useful evidence.

(d)     I also know persons engaged in such illegal activity will often deny ownership of these phones in an attempt to thwart law enforcement's efforts to connect them to more serious crimes, possible co-conspirators, and/or their sources of supply.

(e)     Data contained in a cell phone may reveal the physical location of the cell phone at various times. For example, the latitude and longitude of the camera at the time it

takes a photograph will be contained in the metadata associated with the picture. Also, if a cellular phone has Global Positioning System ("GPS") capabilities (which many do), additional information regarding locations of the phone, such as while it follows GPS directions, may be recovered from the devices.

(f)     Controlled substance traffickers maintain and access books, records, receipts, bills of sale, notes, ledgers, computer software, airline tickets, money orders, and other documents relating to the transportation, acquisition, and distribution of controlled substances and proceeds, and much of this information is commonly stored on electronic devices capable of storing data;

(g)     Traffickers of controlled substances commonly maintain names and contact information in electronic devices, including cellular telephones, which reflect the names addresses, telephone numbers, and email addresses of their drug trafficking associates;

(h)     Persons involved in large-scale drug trafficking may keep and access electronic records of the storage, purchase, and/or trading in large amounts of currency, financial instruments (including stocks, bonds, certificates of deposit, etc.), jewelry, automobile titles, other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to the attainment and concealment of large sums of money, i.e. bank statements, check registers, financial account statements, wire transfer records and documentation of foreign bank accounts, acquired from engaging in narcotic trafficking activities. These items are often stored inside their electronic devices long after they cease trafficking in drugs;

(i)     When drug traffickers amass proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits, i.e., "launder" the profits. To accomplish these goals,

5

drug traffickers many times utilize domestic and foreign banks and/or financial institutions with their attendant services, including sales of securities, cashier checks, money drafts, money orders, letters of credit, etc. Other entities used to "launder" monies include brokerage houses, real estate firms, shell corporations and purported legitimate business fronts. Electronically stored evidence of their attempts to legitimize or "launder" the proceeds is commonly secreted within the electronic storage of their electronic devices long after they cease trafficking drugs;

(j)     Persons engaged in drug trafficking often maintain electronic records reflecting communication with their criminal associates. Specifically, these records may include documents reflecting communications between partners or associates, such as address and phone books reflecting the names and addresses of partners or associates, phone billing records reflecting telephone activity, contracts and other agreements reflecting associations between individuals relative to business ventures, and cashier's checks, money orders, and wire transfers that are evidence of transactions involving the proceeds of criminal activity.

9.     Additionally, I know that mobile communication devices, such as Subject Devices #1 and #2, commonly contain account information including Apps, usernames, and phone numbers which connect them to social media, email, and wireless service providers. If the instant search warrant is granted, the search will likely reveal social media platforms, email accounts, and wireless service providers used by the owner or owners of Subject Devices #1 and #2. Identifying these accounts will allow investigators to seek out additional legal process and likely obtain further information about the geographic location of any devices connected to these accounts, content of the accounts, and evidence of user attribution.

**V.      Information about Electronic Recording Devices**

10.      Through my training and experience, I am aware that people sometimes use electronic recording devices such as Subject Devices #3 and #4, described herein, for work-related and personal purposes. The devices can allow users to discreetly record conversations with third parties for future use.  Based on my knowledge, experience, direct participation in, and conversations with other investigators directly involved in investigations into the distribution of and conspiracy to distribute controlled substances, I know that individuals that are involved in the distribution of controlled substances may use electronic recording devices to maintain a voice record of drug transactions and covertly record others engaged in criminal activity to be used as leverage in future interactions with the recorded person.  Such recordings which may be present on Subject Devices #3 and #4 may be used to identify members of a drug trafficking conspiracy by voice and to determine the roles of individuals within such a conspiracy.

**VI.      Forensic Analysis**

11.      Based on my knowledge, training, and experience, I know that electronic devices, like the Subject Devices, can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices.  This information can sometimes be recovered with forensics tools.

12.      As further described in Attachment B, this application seeks permission to locate not only digital files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the electronic devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe this forensic electronic evidence will be on the Electronic Devices depicted in Attachment A for the following reasons:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium:

**VII.    Probable Cause and Seizure of Subject Devices**

<u>Arrest of Bradley SALDI</u>

13.    In United State District Court for the District of Vermont, on July 7, 2023, SALDI was charged by criminal complaint for violations of 21 U.S.C. § 841 (distribution of controlled substances). I attach a copy of the July 7, 2023, affidavit in support of the criminal complaint as Exhibit 1, hereto, and incorporate the information in that affidavit herein. As described further in Exhibit 1, controlled purchases of controlled substances were conducted from SALDI using a CI on May 15, May 16, June 12, and June 14, 2023.

14.    On July 6, 2023, shortly after 6:00 AM, SALDI was found by law enforcement in his residence, room #18 at 203 N Main Street in Rutland City, Vermont, (The Highlander Motel). SALDI was alone inside the room and taken into custody by law enforcement.

<u>Search of 203 N Main Street Rutland City, Vermont, room 18</u>

15.    Simultaneous to the arrest of SALDI, pursuant to a federal search warrant issued for Room 18 of the Highlander Motel, law enforcement searched 203 N Main Street, Rutland City, Vermont, room 18. During the search, investigators located and seized the Subject Devices from room 18.

     a.  Subject Device #1 was found on the floor in room 18.

     b.  Subject Device #2 was found between the mattress and box spring in room 18.

     c.  Subject Device #3 was found between the mattress and box spring in room 18.

     d.  Subject Device #4 was found between the mattress and box spring in room 18.

16.    In addition to the Subject Devices described above, investigators also located the following items inside room 18 at 203 N Main Street, Rutland City, Vermont:

     a.  3 cell phones that were turned off and located inside of a red craftsman toolbox in room 18.

b. Silver HP Elite Book laptop found in room 18.

c. Drug ledger found on the stand near the bed in room 18.

d. Various drug paraphernalia in the room were photographed to include a cocaine base pipe, scales, chore-boy, syringes, etc.

17. Subject Devices #1, #2, #3, and #4 were all placed into temporary evidence storage at the VSP barracks, Rutland, Vermont.

18. Upon his arrest, SALDI, waived his *Miranda* rights and spoke with Detectives. During the interview, SALDI made admissions and references to distributing narcotics to support his own drug use habits.

19. As described in paragraphs 28-40 of Exhibit 1, a controlled purchase of cocaine base from SALDI was conducted on June 12, 2023. As further described in paragraphs 32-34 of Exhibit 1, during that controlled purchase SALDI left the Highlander Motel because he said he needed to re-up."[1] As further described in Exhibit 1, law enforcement kept SALDI under visual surveillance as he went to two locations after leaving the Highlander Motel to obtain a new supply of cocaine base. I know from my training and experience, that when lower-level distributers of controlled substances need to "re-up," they are often required to communicate with their suppliers via messaging on electronic devices, including cellular phones such as Subject Devices #1 and #2 to coordinate the meeting and pick up of controlled substances. SALDI having interactions with potential suppliers at different drug locations known by law enforcement also increases the likelihood that recordings pertinent to drug trafficking could be contained on Subject Devices #3 and #4. SALDI would be more likely to keep voice memorandums or other digital recordings related to drug trafficking as he attempts to keep track of potential transactions and debts with two suppliers.

---

[1] Based on my training and experience, I know the term "reup" to be slang/street terminology to describe purchasing/obtaining a new supply of drugs for distribution.

20.     On July 20, 2023, SALDI was indicted by a grand jury for distribution of controlled substances in violation of 21 U.S.C. § 841(a).  The indictment alleges the same distributions of controlled substances outlined in the Criminal Complaint.

**VIII.   Conclusion**

21.     Based upon the information above, probable cause exists to believe that on/in the Subject Devices there exists evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a) & 846. By this Affidavit and Application, I request that the Court issue a warrant to search the Subject Devices and seize evidence in accordance with Attachment B.  Finally, the execution of this warrant does not involve the physical intrusion onto a premise given that it seeks only to examine devices already in law enforcement's possession. Consequently, I submit there is good cause for the Court to authorize execution of the proposed warrant at any time in the day or night.


__/s/ Jason Johnson_____
Det. Sgt. Jason Johnson
Task Force Officer
Federal Bureau of Investigation


Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _FaceTime_ on August _4_, 2023.


KEVIN J. DOYLE
U.S. MAGISTRATE JUDGE


11